IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIVERSIFIED REALTY SERVICES, INC.,

    Appellant,

v.

MEYERS LAW GROUP, P.C.,

    Appellee.

_____/

MEYERS LAW GROUP, P.C.,

    Cross-Appellant,

v.

DIVERSIFIED REALTY SERVICES, INC.,

    Cross-Appellee.

_____/

Nos. C 13-03965 WHA;
C 13-03966 WHA

**ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING RULINGS OF BANKRUPTCY COURT**

## INTRODUCTION

In this bankruptcy appeal involving a loan subordination provision, the parties appeal the bankruptcy court's memorandum decision following trial and amended judgment. Appellant argues that the bankruptcy court erred in enforcing the subordination provision because (1) the parties did not intend to subordinate loan repayments and (2) the provision was too uncertain to enforce. Appellee argues that the decision below was correct, except that the bankruptcy court erred in (1) finding the January and February 2008 repayments barred by the four-year statute of limitations and (2) applying a seven percent per annum prejudgment interest rate. For the reasons stated below, the decision and judgment are **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

**STATEMENT**

Greg James Ventures operated an automobile dealership in San Rafael. In November 2007, Greg James Ventures filed for Chapter 11 bankruptcy. *In re Greg James Ventures LLC*, No. 07-11434-DM (N.D. Cal. Bankr. Nov. 5, 2007). Appellee Meyers Law Group, P.C. served as counsel for Greg James Ventures.

Around the same time, Greg James Ventures entered into an agreement with its members to obtain post-petition financing. The agreement included a subordination provision similar to the one at issue in this appeal:

> 2.13   Subordination of Priority. Notwithstanding anything to the contrary herein or in the Security Agreement or any other Loan Document, *the liens and security interest of Lender*, and the superpriority administrative expense claim of Lender, *will be subordinated only to the extent specifically provided in the Interim order, which shall include a subordination to the prior payment of or provision for such fees and expenses of professionals retained by the Debtor as are allowed by the Court*.

(Dkt. No. 10-1 at 150). The interim order approving the transaction stated:

> The Debtor is hereby authorized to grant to the DIP Lenders, in order to secure the Debtor's obligations arising under the DIP Loan Agreement, (i) valid and perfected liens and security interests in and upon any and all present and future real and personal property of the Debtor's estate, whether now owned or hereafter acquired, *subject to all existing valid and enforceable liens and subject to such subordinations in favor of the fees and costs of the United States Trustee and professionals as provided in the DIP Loan Agreement*; and (ii) an administrative expense claim with respect to all of the Debtor's obligations arising under the DIP Loan Agreement having administrative expense priority over any and all other administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, except as provided in the DIP Loan Agreement.

(*id*. at 276) (emphasis added). DIP stands for debtor-in-possession.

While the bankruptcy was underway, Appellant Diversified Realty Services, Inc. and Appellee Meyers (on behalf of Greg James Ventures) negotiated a loan agreement. In an email, dated November 27, 2007, Meyers wrote the following to Diversified:

> **Security**: All amounts owed to the Lender shall be secured by the same liens, *and subject to the same exceptions and subordinations (but also including subordination to the Creditors' Committee's reasonable attorneys' fees, as discussed this afternoon with Vince, with monthly reporting by professionals), as presently contained in the attached loan agreement*, including without limitation a lien

2

> encumbering all assets of GJV, whether personal or real property (including all leasehold interests of GJV), junior only to existing liens in favor of Bank of America and Lucien Friere.

(*id.* at 19) (emphasis added).

According to the agreement, dated November 30, 2007, Diversified agreed to loan Greg James Ventures up to $1.9 million (later expanded to $2.3 million). Greg James Ventures was permitted to prepay the principal amount outstanding (Dkt. No. 10-1 at 199). The subordination provision at issue in this appeal stated:

> 2.13  <u>Subordination of Priority</u>.  Notwithstanding anything to the contrary herein or in the Security Agreement or any other Loan Document, the liens and security interest of Lender, and the superpriority administrative expense claim of Lender, shall be subordinated only to the extent specifically provided in the Interim Order, *which shall include a subordination to the prior payment of or provision for such fees and expenses of professionals retained by the Debtor or the Committee as are allowed by the Court*.  Each such professional shall provide Lender with a monthly summary of such professional's billing.

(*id.* at 201) (emphasis added).  Section 2.14 stated:

> 2.14  <u>No Obligation</u>.  Nothing herein is intended to be or shall be construed to obligate Lender to pay or cause to be paid any fees or costs of Borrower's counsel or fees of the United States Trustee; impose any duty or responsibility on Lender (including, without limitation, any fiduciary obligation) with respect to payment or non-payment of any claims; or subordinate or otherwise prejudice in any respect any rights, claims, liens or security interests of Lender except to the extent specifically set forth in the Interim Order.

(*ibid*).  A December 2007 final order approved a number of loan agreements, including the agreement with Diversified (*id.* at 274–296).

In January, February, and April 2008, while the bankruptcy was still underway, Greg James Ventures made three repayments to Diversified totaling $499,000.  The January 2008 repayment was for $149,370.17; the February 2008 repayment was for $200,000; and the April 2008 repayment was for $150,000 (*id.* at 74).  In February, March, and May 2008, Meyers filed on behalf of Greg James Ventures monthly operating statements identifying the repayments, among other line items.  Meyers also drafted and filed a disclosure statement for the debtor's plan of reorganization which stated:

3

> In December 2007, the Debtor entered into a new loan agreement with Diversified Realty Services, Inc., or DRS, which agreed to lend up to $1,900,000 on a secured basis, in order to fund the Debtor's operations during the Chapter 11 Case. *With Court approval, the Debtor has borrowed and partially repaid funds under that loan agreement with DRS ever since*.

(*id*. at 313) (emphasis added).

An April 2008 order granted Meyer's first interim application for compensation. From time to time, Meyers sent Diversified correspondence regarding its fees, including correspondence in January 2008, September 2008, October 2008, and January 2009. In an email, dated January 30, 2009, Diversified wrote "Yes, you are right, you informed everyone that your legal fees to carry on with the court filing had a priority, but from that conversation and discussion I assumed that those costs would be nominal and in keeping with a conventional process at a reasonable cost" (*id*. at 54).

In February 2012, Appellee Meyers Law Group filed an adversary proceeding in bankruptcy court alleging breach of the loan agreement. *Meyers Law Group, P.C. v. Diversified Realty Services*, No. 12-3030-DM (N.D. Cal. Bankr. Feb. 10, 2012). Meyers alleged that Diversified had agreed to subordinate repayment of its loan to Meyer's fees and expenses. The basic issue was whether repayment of the "new money" took priority over payment of fees for bankruptcy counsel.

In July and August 2012, the bankruptcy court found that Diversified had breached its subordination obligations to Meyers. The August 2012 order stated:

> The evidence shows that [Diversified] knew from the outset that [Meyers] wanted protection for its fees and expenses, whether a loan was from the insiders or from someone else . . . . Under these circumstances and on the record presented, there is no doubt that [Diversified] agreed to subordinate its lien to the unpaid fees and costs of [Meyers] . . . . Meyers is entitled to declaratory judgment that [Diversified] agreed to subordinate its lien to the fees and expenses of [Meyers].

(*id*. at 61–63). A companion order stated:

> Diversified Realty Services, Inc. agreed to subordinate its lien to the fees and expenses of Meyers Law Group, P.C. [Diversified] agreed to subordinate its lien to [Meyer's] fees and expenses, and its receipt of the Cash Repayment and the Transferred Vehicle in derogation of Plaintiff's rights, and subject to Plaintiff's rights

4

>under Section 2.13 of the [Diversified] Loan Agreement, the Third
>Interim Order, and the Final Order.

(*id*. at 70).

In February 2013, trial was held on damages and two remaining affirmative defenses.  In a June 2013 memorandum decision following trial — the subject of the instant appeal — Bankruptcy Judge Dennis Montali found damages of $150,000 based on the April 2008 repayment.  Meyers was "entitled to recover that amount plus interest at the rate of 7% from April 22, 2008."  The January and February 2008 repayments were barred by the four-year statute of limitations, California Code of Civil Procedure 337(1).  An amended judgment disposing of all claims was entered in favor of Meyers (*id*. at 81, 83, 84, 92).

In August 2013, Appellant Diversified filed the instant appeal of the bankruptcy judge's memorandum decision following trial and amended judgment.  Appellee Meyers filed a cross-appeal of the bankruptcy judge's damages and prejudgment interest calculations.  A February 2013 order consolidated the two appeals.

**ANALYSIS**

In deciding an appeal from a bankruptcy court, questions of fact are reviewed for clear error while conclusions of law are reviewed de novo.  A bankruptcy court's findings of fact are accepted unless the reviewing court has a "definite and firm conviction that a mistake has been committed.  Mixed questions of law and fact are reviewed de novo." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) (internal citations omitted).

1. **DIVERSIFIED'S APPEAL.**

In an attempt to marshal a de novo standard of review, Diversified frames the issue on appeal as a "pure question of law: *interpreting an ambiguous subordination clause in light of non-conflicting evidence of intent*" (Br. 1) (emphasis in original).  Diversified characterizes — for the first time on appeal — the subordination provision as a *lien* subordination as opposed to *payment* subordination to argue that Greg James Ventures was simply provided a line of credit for which money was loaned, repaid, and re-loaned.  Lien subordination involves two senior creditors with security interests in the same collateral, one of which has lien priority over the other.  To the extent any value is derived from the collateral, the senior lien lender is repaid first

5

1  from collateral proceeds and the junior lien lender collects from any remaining collateral value.
2  By contrast, payment subordination does not depend on the value of the collateral but instead on
3  the amount owed.  The senior lender enjoys the right to be paid first from all assets of the
4  borrower (Br. Exh. A).

5  Diversified argues that the parties never intended to subordinate repayment to Meyer's fees.  The documents show otherwise.  This order finds, as the bankruptcy judge found based on a series of credibility and factual findings, that the parties intended to subordinate the Diversified lien to the fees and expenses of Meyers.  The bankruptcy judge found that Meyers specifically informed Diversified that the fees would have priority under the loan agreement (*id*. at 85). Attorney Meyers testified:  "For example, in 2.13, after I told [Diversified] that it would mean [sic] I told them that it would mean that our firm's fees and costs would have priority over their loan . . . . I told him that our fees would have priority" (Dkt. No. 9 at 99–100).  The correspondence between Diversified and Meyers in November 2007 show that the parties intended the subordination provision to apply to the fees and expenses (*id*. at 19, 187–88).  The bankruptcy judge rejected Diversified's "after-the-fact revisionist history" which was inconsistent with testimony from three witnesses and the emails exchanged between Diversified and Meyers (*id*. at 85–86).

That Diversified was not obligated to pay for the fees and costs of Greg James Ventures' counsel under provision 2.14 was properly distinguished by the bankruptcy court.  Provision 2.14 "protects [Diversified] from being obligated to pay fees of Debtor's counsel; it does not insulate it from being required to reimburse a party who is the beneficiary of the subordination provision of 2.13, even though in fact the amounts unpaid represent attorneys' fees" (*id*. at 88). The dispute between Diversified and Meyers is "an inter-creditor issue and not the shifting of attorneys' fees."

Diversified further argues that the subordination provision is too ambiguous and circular to enforce because even the bankruptcy judge recognized its "imprecise drafting."  In other words, Diversified seeks to render provision 2.13 void so that it can retain the repayments.  The decisions cited by Diversified (most of which are non-binding) are inapplicable.  Provision 2.13

6

is not so uncertain and indefinite that it would be inequitable or absurd to enforce the agreed upon term. Significantly, a largely similar subordination provision appears in Greg James Ventures' loan agreements with its members, to which Diversified claims unconvincingly that the parties "intended to impose payment subordination on the owners but not on Diversified" (Br. 16). That the provision with Diversified did not specifically detail the extent of subordination intended, but instead referenced the interim order and stated that "subordination to the prior payment of or provision for such fees and expenses of professionals retained by the Debtor or the Committee as are allowed by the Court," does not suffice to void the provision. Indeed, the critical fact is that Meyers informed Diversified that the fees would have priority over the loan. This order also finds it curious that Diversified argued to the bankruptcy judge (to no avail) that Diversified "understood the subordination provisions to apply only to someone such as the United States Trustee's fees," but now switches on appeal to arguing that the entire provision is wholly unenforceable and should be stricken. The request to strike the provision is denied. The bankruptcy court's decision as to this aspect was not in error.

### 2.  MEYER'S CROSS-APPEAL.

For its part, Meyers cross-appeals, arguing that the bankruptcy court's decision is otherwise correct, except in two respects:  (1) the January and February 2008 repayments were erroneously barred under the four-year statute of limitations because the breach did not occur until the bankruptcy court approved the fees in April 2008 and (2) the prejudgment interest rate should have been ten percent per annum as opposed to the seven percent imposed.

#### A.  Statute of Limitations.

Meyers argues that the bankruptcy court erred in finding the January and February 2008 repayments time-barred because the breach of the subordination provision did not occur until the bankruptcy court approved Meyers' fees in April 2008. The bankruptcy court found that Meyers knew about the repayments "as early as February 20" when the January monthly report was filed. The issue on appeal is thus whether the limitations period was triggered by knowledge of the repayment or court approval of Meyers' fees. This order finds that the limitations period

7

began on April 30, 2008, when the court approved Meyers' fees.  The bankruptcy court thus erred in finding the January and February repayments time-barred.

The bankruptcy court relied primarily on three items of evidence in making its decision. *First*, the bankruptcy court found that Meyers *knew* about the January repayment as early as February 20 when it filed a monthly operating report for Greg James Ventures. *Second*, Meyers signed a disclosure statement, dated February 29, 2008, stating: "[w]ith Court approval the Debtor has borrowed and partially repaid funds under the loan agreement with [Diversified] ever since" (Dkt. No. 10-1 at 313).  That is, Meyers knew (or was put on inquiry notice) that Greg James Ventures made partial repayments to Diversified. *Third*, Meyers was foreclosed from arguing that the breach occurred in April because Meyers previously represented to the bankruptcy court at least twice that the breach occurred when the repayments were made. Meyers then waited until February 2012 to commence its adversary proceeding.   The bankruptcy court erred because the subordination provision stated that Diversified's lien "shall be subordinated . . . to the prior payment of or provision for such fees and expenses of professionals retained by [Greg James Ventures] . . . *as are allowed by the Court*."  When Meyers' fees were approved by the bankruptcy court and Diversified failed to provide for Meyers' fees, the limitations period commenced.

To be sure, the following hypothetical is provided.  Greg James Ventures makes a repayment to Diversified in January.  Another repayment is made in February.  Two weeks later, Meyers files an operating report on behalf of Greg James Ventures identifying the January repayment, among other line items.  A week later, Meyers files a reorganization plan recognizing that Greg James Ventures partially repaid funds to Diversified.  On March 1, 2008 — before filing a fee application or obtaining bankruptcy court approval — Meyers files an action against Diversified alleging breach of contract (*e.g.*, filing the action commenced in February 2012). One would naturally expect that Diversified's response to Meyers' complaint would be that Meyers is not entitled to fees yet because fees have not been "allowed by the Court" pursuant to provision 2.13.  Meyers' adversary proceeding would be premature.  It also would contravene logic to require Diversified to have received the January repayment and pass it along to Meyers

prior to a bankruptcy court allowing such fees. Diversified, of course, would retain the repayment until fees were allowed by the court.

Accordingly, the statute of limitations for the claim for recovery of the January and February 2008 repayments based on Diversified's breach of the subordination provision did not begin to run until the bankruptcy court approved Meyers' fees in April 2008. Meyers commenced the adversary proceeding in February 2012, within the four-year statute of limitations. The bankruptcy court's finding that the claim for recovery of the January and February repayments is time-barred is therefore **REVERSED**.

This order, however, recognizes Meyers' about-face before the bankruptcy court. Meyers should not have represented to the bankruptcy judge that the "first breach" occurred in January 2008 when it would eventually argue at trial that the breach occurred in April 2008. Additionally, Meyer's "discovery rule" and "continuous accrual" arguments for tolling need not be reached in light of the findings in this order.

### B. Prejudgment Interest.

Meyers argues that the bankruptcy court erred in applying a seven percent interest rate because Section 3289(b) of the California Civil Code provides that "[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." The loan agreement, moreover, provided for a 10% or 12% interest rate depending on the payment tranche. Diversified did not respond to this aspect of Meyers' cross-appeal.

This order finds that the bankruptcy court erred in applying a seven percent interest rate when a ten percent interest rate applies. This aspect of the bankruptcy court's decision is **REVERSED**.

9

**CONCLUSION**

In sum, the bankruptcy judge's decision and judgment is, except as otherwise provided below, **AFFIRMED**. This order finds that the claim for recovery of the January 2008 repayment for $149,370.17 and February 2008 repayment was for $200,000 was not time-barred. Also, a ten percent interest rate should have been applied. The bankruptcy court's decision as to these two issues is **REVERSED** and the action is **REMANDED** for entry of judgment in accordance with this order.

**IT IS SO ORDERED.**

Dated: February 7, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE